# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| DEIRDRE SEIM, Individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>HOMEAWAY, INC., a Delaware corporation, and DOES 1-10,<br><br>    Defendants. | **CLASS ACTION COMPLAINT**<br><br>CASE NO. 1:16-cv-00479<br><br>JURY TRIAL DEMANDED |

Plaintiff, Deirdre Seim (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this Class Action Complaint against Defendant HomeAway, Inc., (hereinafter "Defendant"), and upon information and belief and investigation of counsel, states as follows:

## JURISDICTION AND VENUE

1.  This Court has original jurisdiction over this action under 28 U.S.C. § 1332 (d) of The Class Action Fairness Act because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs and because Plaintiff and Defendant are residents of different states.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs suffered injuries as a result of Defendant's acts in this District, Defendant is authorized to conduct business in this District, Defendant resides in this District and Defendant is subject to personal

jurisdiction in this District.

## NATURE OF THE CASE

3.      This is a class action complaint against HomeAway, Inc., and its websites, HomeAway.com, VRBO.com, and VacationRentals.com, for damages arising from Defendant's breach of contract, violation of Texas law, as well as analogous common and consumer protection laws in each state in which Defendant operates.

4.      Defendant through its various websites operates as a vacation rental marketplace, allowing homeowners and managers (hereinafter "owners") to offer short-term vacation rental properties to travelers by charging owners annual subscription fees for the right to list their vacation properties on one or more of Defendant's websites.

5.      Owners pay Defendant to use Defendant's websites to advertise their vacation properties, and also to access and utilize various booking, tracking, and financial tools provided by Defendant's website, facilitating communication between property owners and travelers.

6.      As a vacation rental marketplace, Defendant through its websites allowed travelers to rent vacation properties from owners. Travelers could search Defendant's websites, locate a vacation property to rent, communicate with the owner of the vacation property, and rent the vacation property without paying an additional fee to Defendant.

7.      As a vacation rental marketplace, owners paid the costs of listing and renting their vacation properties, while travelers were only required to pay the cost of renting the vacation property itself. Defendant did not charge any additional fees to travelers.

8.      This marketplace model was preferred by owners because charging travelers additional fees, beyond the cost of the rental property itself, deterred travelers from renting owners' vacation properties or reduced the rental prices owners might advertise and/or charge. In short,

forcing travelers to pay additional rental fees, unrelated to the vacation property itself, caused owners to lose bookings and money.

9.     Defendant represented to its customers that it would continue to remain free for travelers and contractually obligated itself to do so, distinguishing itself from other online rental websites. Defendant represented that it would continue to earn its revenue through the annual subscription fees paid by homeowners, and by offering optional services and tools to homeowners.

10.     In reliance on Defendant's marketplace model, including Defendant's promise and reassurance that it would not charge additional fees to travelers, Plaintiff and thousands of other homeowners entered into year-long contracts with Defendant for the right to list their rental vacation properties on Defendant's websites. In exchange for that right, Plaintiff, and other property owners, paid Defendant annual subscription fees, often thousands of dollars per property. Plaintiff, for example, paid $1,448.00 to list one of her five rental properties for 12 months.

11.     Defendant knew that Plaintiff and other owners relied on Defendant's marketplace model, including Defendant's promise not to charge travelers additional fees. Defendant was aware of Plaintiff and other owners' reliance on Defendant's representations when they entered into year-long contracts with Defendant, and paid annual subscription fees to Defendant.

12.     Contracts that Plaintiff and other owners entered into with Defendant specified that charges and fees in effect at the time of the subscription agreements would govern throughout the one-year term of those agreements. Accordingly, because Plaintiff and other owners' agreements did not include a fee to travelers, Defendant was contractually prohibited from changing that term of the parties' agreement during the one-year contract term.

13.     On February 9, 2016, despite the contractual provision specifying charges, and despite Defendant's repeated representations that use of its websites would remain free to travelers,

Defendant unilaterally abandoned and materially changed the contract, abandoning its marketplace model and adopting an entirely different model and rate structure in the middle of the contractual period.

14.     On February 9, 2016, Defendant adopted a materially different "online travel agency" model (hereinafter "OTA model"), whereby Defendant began to charge additional fees to travelers for the use of Defendant's websites, giving these additional fees the generic label, "service fees."

15.     The "service fees" instituted as part of Defendant's OTA model ranged from 4 percent to 10 percent of the total price of the owner's vacation property, thereby increasing the total cost to travelers. Just as Plaintiff and other owners feared, the "service fees" have reduced the number and value of bookings by travelers, resulting in significant damage to Plaintiff and other owners, and have breached the contracts Plaintiff entered into with the Defendant.

16.     By this action, Plaintiff seeks compensation for the damages that she and other similarly situated owners have suffered as a result of Defendant's breaches of contract, fraud and violation of consumer protection statutes.

## **PARTIES**

17.     Plaintiff, Deidre Seim, is an individual, citizen and resident of Louisville, Kentucky. Plaintiff has been a HomeAway subscriber through HomeAway's website, VRBO, since approximately 2011. Plaintiff currently has five listings through HomeAway's website, VRBO.com: one pay-per-booking listing, three gold listings, and one silver listing. Plaintiff's contract with HomeAway consists of (and her relationship with HomeAway and VRBO is governed by) the HomeAway Terms and Conditions effective September 15, 2015, a true and accurate copy of which is attached hereto as Exhibit 1.

18.     Defendant HomeAway, Inc., is incorporated in Delaware with its headquarters and principal place of business in Texas. HomeAway owns and operates at least 40 websites, including, in the United States, HomeAway.com, VRBO.com, and Vacation Rentals.com.

19.     The true names, roles and/or capacities of Defendants named as DOES 1 through 10, inclusive, are currently unknown to Plaintiff and therefore, are named as Defendants under fictitious names. Plaintiff will identify Does 1 through 10 and their respective involvement in the wrongdoing at issue if and when their identities become known.

20.     The acts alleged to have been done by Defendants, and each of them were authorized, ordered or done by their directors, officers, agents, partners, employees or representatives while actively engaged in the management and affairs of each of Defendant's respective websites.

## FACTS

21.     Vacation rental properties are fully furnished, privately owned residential properties, including homes, condominiums, villas, and cabins, that property owners and/or property managers rent to the public on a short term basis, either nightly, weekly or monthly.

22.     Defendant operates the world's largest online market for vacation rental properties. As of 2015, Defendant's websites included approximately 1 million paid vacation rental listings in 190 countries, and Defendant's websites state, "We've helped over 35 million travelers . . ."

23.     Defendant primarily serves both homeowners and managers of vacation property who wish to rent vacation properties to tenants on a short term basis, as well as travelers seeking to rent vacation homes on a short term basis.

24.     Owners pay Defendant an annual subscription fee, and in exchange for the subscription fee owners are permitted to list their vacation rental properties on one or more of

Defendant's websites. Owners listing their properties may include additional information about the vacation property, including description, cost, availability, and photographs of the property.

25.     Through its websites Defendant offers multiple subscription options to owners. On Defendant's website, VRBO.com, Defendant offers five varying subscription "levels," including classic, bronze, silver, gold and platinum. Classic is the cheapest subscription level, while platinum is the most expensive subscription level. For a one-year term, the subscription level costs owners anywhere from several hundred to well over one thousand dollars.

26.     Defendant advertises that owners obtain greater benefits at higher levels of subscription. For example, platinum subscriptions receive greater benefits than gold subscriptions. The most significant benefit that owners receive for purchasing a more expensive subscription is a higher ranking in search results when travelers search Defendant's websites for rental properties.

27.     More expensive subscriptions buy the owner visibility when travelers search for properties on Defendant's websites. For example, rental properties posted by owners who are silver-level subscribers will appear before postings by classic-level subscribers. The more costly the subscription, the higher ranking the owner's listing will receive among traveler search results.

28.     When travelers search one of Defendant's websites for a vacation rental property, they may select certain criteria such as location of the property, size of the property, travel dates and availability, as well as number of guests. Based upon the traveler's search, Defendant's website produces a list of vacation rental properties pursuant to the traveler's criteria, with listings from more expensive subscriber levels appearing before listings with less expensive subscription levels.

29.     Defendant also offers the owners two different bundle options at additional cost. United States subscribers may select either a "US Bundle" or a "Global Bundle." Owners can

purchase the "US Bundle" allowing their rental properties to appear on Defendant's three principal U.S. websites: HomeAway.com, VRBO.com, and VacationRentals.com. Owners can purchase the more expensive, "Global Bundle" allowing their rental properties to appear on all three principal U.S. websites, as well as 24 international websites that are owned by Defendants. These bundle options are sold on a one-year subscription basis, and cost several hundred dollars each.

30.     Prior to February 9, 2016, Defendant obtained revenue principally through the sale of varying subscriptions and bundles to owners who utilized its websites. Defendant did not obtain any additional fees from travelers using its websites and did not charge travelers any type of booking or service fees.

31.     Defendant consistently advertised and promoted that its websites were free to travelers, and would remain free to travelers pursuant to its marketplace model. This model distinguished Defendant from other online travel competitors such as TripAdvisor and Airbnb.

32.     Defendant described this marketplace model, whereby travelers would never be charged for use of Defendant's websites, as part of Defendant's business plan. Brian Sharples (hereinafter "Sharples"), HomeAway's co-founder and CEO described the marketplace model as central to HomeAway's business plan, partly because of Sharples' knowledge of the failure of Vacationspot.com, a leading vacation rental marketplace business in March 2000. Expedia, Inc., purchased vacationspot.com, and attempted to change vacationspot.com from a marketplace model, into an OTA model charging fees based on a percentage of the total booking price. Shortly after Expedia attempted to make this change, vacationspot.com went out of business, largely in part due to the change in model and rate structure from a marketplace model to an OTA model.

33.     Defendant represented and promoted the fact that its websites were free to travelers, and would remain as such. Sharples stated:

> We are going to be free to travelers. TripAdvisor and Airbnb have chosen to charge big fees to travelers. Well, we're going to have a pretty sizeable marketing budget in the next few years. And we're going to be letting everybody know, when you come to our platform and you don't pay a fee and we think that's a big deal, because if you look historically at the travel industry, those competitors who adopted no traveler fees first are the ones that ended up being the big winners in that business.[1]

34.    Consistent with Defendant's representations, it remained for many years a marketplace model, charging fees to owners for listing their vacation rental properties on its websites, and permitting travelers to pay only the cost of the rental property itself, with no additional charges or fees.

35.    Defendant's contract with subscribing owners, such as Plaintiff, reflected the marketplace model in its Terms and Conditions, stating:

> HomeAway.com and other Sites act as a venue to allow homeowners and property managers who advertise on the Site (each, a "member") to offer for rent in a variety of pricing formats, a specific vacation or short term rental property to potential renters (each, a "traveler" and, collectively with a member, the "users").

36.    Similarly, Defendant's website promoted the marketplace model, advertising as follows:

a.    "VRBO has no booking fees and is free for travelers."

b.    "No traveler fees. Free to book with no hidden costs."

c.    "No fees for travelers. No online booking fees or hidden costs."

37.    Plaintiff owns five vacation properties that she lists on VRBO.com. The first property has been listed since approximately 2011; the second property has been listed since approximately February 2012; the third property has been listed since approximately August 2012;

---

[1]    http://www.vrmintel.com/pm-insight-homeaways-third-quarter-earnings-call/ (last visited April 11, 2015).

the fourth property has been listed since approximately September 2013; and the final property has been listed since approximately 2014. Since initially listing each property, Plaintiff has annually renewed her subscriptions to advertise on Defendant's website for each property. Plaintiff renewed each subscription prior to February 9, 2016.

38.     In reliance on Defendant's representations that it was and would continue to remain a marketplace model, free to travelers, Plaintiff purchased two gold level subscriptions, one silver level subscription and one pay-per-booking listing from VRBO.com for her five properties located in Louisville, Kentucky prior to February 9, 2016. On or about November 28, 2015, she purchased a gold level subscription and global bundle for an additional property, resulting in cost of $1,448.00.

39.     At the time Plaintiff purchased her subscriptions, Defendant's contract, including its Terms and Conditions, specified that HomeAway's rates and fees would not change from the marketplace model described, during the one-year term of the contract, stating:

> For subscription listings, the rates in effect at the time of the member's next subscription renewal, new listing or a member's upgrade or any other additional or new order of any product or service will govern for such renewal or other order.

40.     The contract further specified that any non-clerical or substantive changes to the Terms and Conditions would be effective only if approved by Plaintiff:

> We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that your consent to any such amendment is not required in the event that the proposed amendment is clerical and/or non-substantive in nature. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms, and will be effective immediately. If you disagree with any non-clerical and/or substantive amendment to these Terms, then (i) your sole remedy as a traveler, or any other user other than a member, is to discontinue your use of the Site, and (ii) your sole remedy as a member is to

> withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment you agree that you are responsible for keeping a copy of such terms.

41. Thus the terms of the contract between Plaintiff and Defendant prohibited HomeAway from changing its fees or rates during the one-year term of the contract and the subscription for which Plaintiff had paid, without Plaintiff's prior consent.

42. At no time since renewing her subscriptions, has Plaintiff consented to any changes in Defendant's fees or rate. Despite this, and despite Defendant's contractual obligations, Defendant unilaterally, substantively, non-clerically and materially altered its fee and rate structure on February 9, 2016. This change meant Defendant would no longer be free to travelers as previously promised, and Defendant would no longer use the marketplace model that it had promoted and advertised.

43. After February 9, 2016, Defendant began charging travelers "service fees" equal to between 4 percent and 10 percent of the rental rate of the owner's property. Defendant's newly imposed "service fees" thus cost travelers hundreds of dollars, in addition to the owner's rental rate.

44. For Plaintiff and other owners, the effects of Defendant's newly imposed "service fees" has been significant, immediate, and negative, reducing the number and value of bookings when compared with previous years.

45. Plaintiff and other owners have been damaged by Defendant's unilateral and material change to the contract, specifically its adoption of "service fees" charged to travelers, implemented without notice and in breach of Defendant's contracts with Plaintiff and other

owners.

a.    Plaintiff and other owners' subscriptions to Defendant's websites are devalued. Plaintiff and other owners agreed to Terms and Conditions which did not impose fees to travelers, and paid to subscribe to Defendant's website in reliance on those Terms and Conditions which did not impose additional fees upon travelers. Had Defendant charged fees to travelers when Plaintiff and other owners subscribed, Plaintiff and other owners would not have subscribed, or would have paid less for their subscriptions.

b.    Plaintiff and other owners have lost bookings because of Defendant's newly imposed "service fees" to travelers. Travelers decline to rent Plaintiff's and other owners' vacation rental properties when they are confronted with the obligation to pay additional fees beyond the cost of the rental property itself. As a result, Plaintiff and other owners are now receiving fewer bookings than they would have received absent Defendant's newly imposed "service fees."

c.    Plaintiff and other owners did not agree or consent to a unilateral, material alteration of those contracts by Defendant, and have been damaged by Defendant's breach of contract.

## CLASS ALLEGATIONS

46.    A class action is the proper form to bring Plaintiff's claims under FRCP 23. The potential class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and

adequately protect the interests of the class.

47.     This action satisfies all requirements of FRCP 23, including numerosity, commonality, typicality, adequacy, predominance and superiority.

48.     **Numerosity:** the Class is so numerous that joinder of all members is impracticable. While the exact number is unknown at this time, it is generally ascertainable by appropriate discovery.

49.     **Commonality:** the claims made by Plaintiff meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include without limitation:

a.      Whether the Terms and Conditions restrict HomeAway from unilaterally changing its fees and rates without approval;

b.      Whether HomeAway represented that it would not charge fees to travelers;

c.      Whether HomeAway began charging fees to travelers;

d.      Whether HomeAway's practice of charging fees to travelers breached the parties' contracts;

e.      Whether HomeAway's practice of charging fees to travelers deprived Class members of the benefits of their contracts;

f.      Whether HomeAway's conduct injured the Class and sub-classes;

g.      The amount of revenues and profits HomeAway received and/or the amount of monies or other obligations imposed on or lost by the Class members as a result of HomeAway's conduct;

h.      Whether Class members are threatened with irreparable harm and/or are

entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

i.      Whether the Class members are entitled to payment of equitable monetary relief and/or damages plus interest thereon, and if so, what is the nature of such relief.

50.    **Typicality:** Plaintiff's claims are typical of those of the other class members because Plaintiff, like every other class member, has been damaged by Defendant's conduct because Plaintiff and all members of the Class entered into substantially identical contracts with Defendant pursuant to which they were permitted to list their vacation rental properties on one or more of Defendant's websites. Pursuant to the terms of those contracts, Defendant was prohibited from changing its rates and charges during the terms of those agreements without the express approval of Plaintiff and the Class members. Notwithstanding the fact that Plaintiff nor Class members did not approve any changes to Defendant's rates or fees, Defendant unilaterally and without any legal right to do so, changed its rates and fee model during the term of its contracts with Plaintiff and Class members. Plaintiff and Class members have been damaged by Defendant's conduct in that their subscriptions to Defendant's websites have been devalued to an amount less than what they paid for those subscriptions and in that they have lost bookings of their vacation rentals that they otherwise would have received in the absence of Defendant's "service fees" to travelers.

51.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the class because Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class members. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class, and the damages Plaintiff has suffered are typical of other Class members.

52.     **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate their claims against a large corporate Defendant. Further, even for those Class members who could afford to litigate such a claim, it would remain an economically impractical alternative.

53.     The nature of this action and the nature of Texas law and consumer protection laws available to Plaintiff and the Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual lawsuits could unreasonably consumer the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed concerning five properties owned by Plaintiff, is representative of that experienced by Class members and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

54.     The proposed Class is defined as follows:

All persons residing in Kentucky ("Kentucky Class") and/or the United States ("Nationwide Class") who purchased a subscription to list property for rent on one or more

of HomeAway's websites before February 9, 2016.

55.     Plaintiff reserves the right to modify or amend the definition of the proposed class if discovery and further investigation reveals that the class should be expanded, divided into additional subclasses, or modified in any other way.

56.     Plaintiff will fairly and adequately protect the interests of the Class. The interests of the Class representative are consistent with those of the other members of the Class. In addition, Plaintiff is represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

57.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

58.     Excluded from the Class are:

     a.     Defendant and any entities in which Defendant has controlling interest;

     b.     Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

     c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

     d.     All persons or entities that properly execute and timely file a request for exclusion from the Class;

     e.     Any attorneys representing the Plaintiff or the Class.

## FIRST CAUSE OF ACTION
### Violations of State Consumer Protection Statutes

59.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing

allegations as though fully set forth herein.

60.     Defendant engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection statutes listed below. The direct and proximate result of Defendant's misrepresentations and unlawful course of conduct was the inducement of Plaintiff and members of the Class to enter into a contract and/or renew their subscriptions with Defendant.

61.     The actions and failures to act of Defendant (including the false and misleading representations and omissions of material facts, and the course of fraudulent conduct and fraudulent concealment described in this Complaint) constitute acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, misrepresentations and the knowing concealment, suppression, or omission of material facts in connection with the Terms and Conditions of the parties' contract, all in violation of consumer protection statutes.

62.     Defendant's misrepresentations and omissions induced Plaintiff and members of the Class to enter into contracts, the Terms and Conditions of which did not impose fees to travelers, and induced Plaintiff and members of the Class to pay to subscribe to Defendant's websites in reliance on those Terms and Conditions. Had Defendant charged fees to travelers when Plaintiff and other owners subscribed, Plaintiff and other owners would not have subscribed, or would have paid less for their subscriptions.

63.     Defendant was well aware that Plaintiff and members of the Class relied on Defendant's representations that it did not and would not impose fees upon travelers. Defendant intended Plaintiff and the members of the Class would rely on its materially deceptive practices; and that Plaintiff and members of the Class would purchase or renew their subscriptions as a consequence of Defendant's representations and the Terms and Conditions of the parties'

contracts. Plaintiff and members of the proposed class were deceived by Defendant's misrepresentations, which constitute unfair and deceptive acts and practices.

64.     As a proximate result of Defendant's misrepresentations, Plaintiff and members of the Class have suffered an ascertainable loss, in an amount to be determined at trial, in that they paid for services that they would not have purchased, or would have paid less for such services, had Defendant not engaged in unfair and deceptive conduct. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendant's conduct.

65.     Under the statutes listed herein to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices, Defendant is the supplier, manufacturer, advertiser and seller that is subject to liability for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

66.     By engaging in the foregoing conduct, Defendant has violated the following States' Unfair and Deceptive Trade Practices and Consumer Fraud Laws:

a.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

b.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq.;

c.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-101, et seq.;

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.;

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-105, et seq.;

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, et seq.;

g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.;

h.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 283901, et seq.;

i.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

j.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, et seq.;

k.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, et seq.;

l.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, et seq.;

m.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.;

n.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

o.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.;

p.      Defendants have engaged in unfair competition or unfair deceptive acts or practices in violation of LSA-R.S. 51:1401, et. seq.;

q.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

r.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. COM. LAW CODE § 13-101, et seq.;

s.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

t.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

u.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, et seq.;

v.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, et seq.;

w.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

x.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

y.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

z.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A: 1, et seq.;

aa.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M Stat.§ 57-12-1, et seq.;

bb.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y . Gen. Bus. Law § 349, et seq.;

cc.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

dd.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.;

ee.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.;

ff.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. 15 § 751, et seq.;

gg.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.;

hh.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of PA. CONS. STAT. § 201-1, et seq.;

ii.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN LAWS § 6-13.1-1, et seq.;

jj.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

kk.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

ll.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

mm.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

nn.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, et seq.;

oo.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451 et seq.;

pp.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

qq.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

rr.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, et seq.;

ss.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT § 100.18, et seq.; and

tt.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN § 40-12-101, et seq.

67.     As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff and members of the Class are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

## SECOND CAUSE OF ACTION
### Violation of Uniform Deceptive Trade Practices Act

68.     Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

69.     Plaintiff asserts this claim for violations of the Uniform Deceptive Trade Practices

Act ("UDTPA"), on behalf of a subclass composed of all Class members who reside in the twenty-three states that have enacted provisions of the UDTPA.

70.     Defendant engaged in deceptive trade practices in violation of the twenty-three state consumer protection statutes that incorporate provisions of the UDTPA by, inter alia, (a) representing its goods and/or services had characteristics and benefits which they do not have by falsely representing that owners who purchased subscriptions to its websites would be able to rent vacation properties to travelers without travelers paying additional fees beyond the cost of the rental property itself; (b) representing that its goods and/or services had characteristics they do not have by falsely representing that listings from owners with more expensive subscription levels would appear above listings from owners with lesser expensive, or no subscription to Defendant's websites; (c) representing that owners who purchased subscriptions to its websites would be able to rent to travelers without travelers incurring additional fees beyond the cost of the rental property, when Defendant knew it would impose such fees upon travelers searching and booking vacation homes through its websites; (d) representing that the agreement between Defendant and Plaintiff would confer rights, remedies, or obligations, which it did not, by falsely representing that owners would be able to rent their vacation properties to travelers without travelers incurring additional fees beyond the cost of the rental property; and (e) failing to disclose information known to Defendant concerning its goods and/or services, including Defendant's intent to charge substantial fees to travelers using its websites and giving these fees a generic label of "service fees."

71.     Defendant has violated the deceptive trade practices statutes of the following states that incorporate provisions of the UDTPA, as follows:

        a.      Defendants have engaged in deceptive trade practices in violation of Ala. Code § 8-19-5, et seq.;

        b.      Defendants have engaged in deceptive trade practices in violation of Alaska

Stat. § 45.50.471, et seq.;

c.      Defendants have engaged in deceptive trade practices in violation of Cal.
        Civ. Code § 1770 et seq.;

d.      Defendants have engaged in deceptive trade practices in violation of 6 Del.
        C. § 2532, et seq.;

e.      Defendants have engaged in deceptive trade practices in violation of Ga.
        Code Ann. §§ 10-1-372, et seq. 10-1-393, and 26-2-29 et seq.;

f.      Defendants have engaged in deceptive trade practices in violation of Haw.
        Rev. Stat. § 481A-3, et seq.;

g.      Defendants have engaged in deceptive trade practices in violation of Idaho
        Code § 48-603 et seq.;

h.      Defendants have engaged in deceptive trade practices in violation of 815 Ill.
        L.C.S. § 510/2 et seq.;

i.      Defendants have engaged in deceptive trade practices in violation of 10 Me.
        Rev. Stat. Ann. § 1212, et seq.;

j.      Defendants have engaged in deceptive trade practices in violation of Mich.
        Comp. L. Ann. § 445.903 et seq.;

k.      Defendants have engaged in deceptive trade practices in violation of Minn.
        Stat. Ann. § 325D.44 et seq.;

l.      Defendants have engaged in deceptive trade practices in violation of Miss.
        Code Ann. § 75-24-5 et seq.;

m.      Defendants have engaged in deceptive trade practices in violation of Neb.
        Rev. Stat. §§ 81-2,285 et seq. and 87-302 et seq.;

n.      Defendants have engaged in deceptive trade practices in violation of N.H.
        Rev. Stat. § 358-A:2 et seq.;

o.      Defendants have engaged in deceptive trade practices in violation of N.M.
        Stat. Ann. § 57-12-2 et seq.;

p.      Defendants have engaged in deceptive trade practices in violation of Ohio
        Rev. Code § 4165.02 et seq.;

q.      Defendants have engaged in deceptive trade practices in violation of Or.
        Rev. Stat. § 646.608 et seq.;

r.      Defendants have engaged in deceptive trade practices in violation of 10 Penn. Stat. § 162.15 et seq. and 73 Penn. Stat. § 201-2 et seq.;

s.      Defendants have engaged in deceptive trade practices in violation of R.I. Gen. Laws § 6-13-1.1 et seq.;

t.      Defendants have engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104 et seq.;

u.      Defendants have engaged in deceptive trade practices in violation of Tex. Bus. & Comm. Code § 17.46, et seq.;

v.      Defendants have engaged in deceptive trades practices in violation of Utah Code § 13-11a-3 et seq.;

w.      Defendants have engaged in deceptive trade practices in violation of W.Va. Code § 46A-6-102 et seq.;

72.     As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff and members of the Class are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

### THIRD CAUSE OF ACTION
**Breach of Contract**

73.     Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

74.     As set forth herein, Plaintiff and Defendant entered into a contract, attached hereto as Exhibit 1.

75.     Plaintiff has fully performed all material covenants, conditions and obligations she was required to perform by reason of the contract, except to the extent waived, excused or made impossible by Defendant's breaches of the contract.

76.     Section 21 of the contract provides:

> For subscription listings, the rates in effect at the time of the member's next subscription renewal, new listing or a member's

upgrade or any other additional or new order of any product or service will govern for such renewal or other order."

77.     Section 21 further provides that Defendant cannot make any non-clerical or substantive changes to amendments to the contract without the consent of Plaintiff.

78.     As set forth herein, Defendant has materially breached the parties' contract by (a) unilaterally and without Plaintiff's consent instituting new and additional rates and fees that were not in effect at the time Plaintiff renewed her subscriptions; and (b) purporting to unilaterally make substantive, non-clerical changes to the contract.

79.     As a direct and proximate result of Defendant's breaches of contract, Plaintiff has suffered, and will continue to suffer in the future, damages in an amount to be proven at trial, plus interest allowable under applicable law.

### FOURTH CAUSE OF ACTION
**Breach of Duty of Good Faith and Fair Dealing**

80.     Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

81.     A special relationship exists between Plaintiff and Defendant due to the element of trust necessary to accomplish the undertaking, as well as the imbalance of bargaining power between Plaintiff and Defendant.

a.     An element of trust is necessary because Plaintiff and Class members rely upon Defendant to facilitate travelers' rentals of owners' vacation properties, including notification of the rental, accurately communicating the traveler's name and contact information, accurately communicating and facilitating the traveler's payment, and transferring the traveler's payments to owners. Further, after a booking, Plaintiff and Class members must trust

Defendant to convey accurate and truthful information on their behalf to the traveler.

b.  An element of trust is necessary because Plaintiff and Class members rely upon and trust that Defendant's websites, including listings and search results, accurately present listings on behalf of Plaintiff and the Class members, and to further present the listings as ranked pursuant to the subscription levels and/or bundles purchased by Plaintiff and members of the Class.

c.  An imbalance of bargaining power exists between Plaintiff and Class members and Defendant, the owner and operator of the world's largest online vacation rental marketplace. Defendant's websites list more than one million vacation rental properties, substantially more than competitors. Defendant's websites attract nearly one billion website visits per year, substantially more than competitors. As a result, Plaintiff and Class members have no reasonable alternative, and inequitable bargaining power exists between the parties, forcing Plaintiff and Class members to accept the terms and conditions offered to them by Defendant.

d.  An imbalance of bargaining power is further evidenced by Defendant's exclusive control over payments received from travelers when renting vacation rental properties owned by Plaintiff and members of the Class. As a result, Plaintiff and members of the Class are forced to rely on Defendant to forward those payments in full, without unreasonable delay, and without additional fees or other charges.

82.     A duty of good faith and fair dealing runs from Defendant to Plaintiff and the Class, imposing upon Defendant an obligation to cooperate with Plaintiff and Class members to enable performance and achievement of the expected benefits of the contract. The duty of good faith and fair dealing thus prohibits Defendant from engaging in any activity of conduct which would prevent Plaintiff and Class members from receiving expected benefits of the contract, or conduct that evades the spirit of the transaction.

83.     Plaintiff has fully performed all covenants, conditions and obligations required by her to be performed by reason of the contract, except to the extent waived, excused or made impossible by Defendant's breaches of the contract.

84.     Defendant breached its duty of good faith and fair dealing owed to Plaintiff and Class members by materially changing its rate and fee structure during the term of the contract, specifically by imposing additional fees on travelers, labeled as "service fees." This conduct denies Plaintiff and Class members the benefits expected from the contracts, namely, the ability to rent vacation properties to the largest number of qualified travelers reasonably possible.

85.     As a direct and proximate result of Defendant's breaches of duty, Plaintiff and Class members have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Fraud

86.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

87.     Prior to renewal of Plaintiff's subscriptions to Defendant's websites, Defendant consistently represented that booking through its websites was and would remain free to travelers. Defendant knew Plaintiff and Class members relied upon these material representations, and Defendant made these material representations to induce Plaintiff and members of the Class to act.

88. Those representations were material to Plaintiff, such that, had Plaintiff known that the representations were false, Plaintiff would not have renewed her subscriptions, or would have renewed her subscriptions at a lesser price. But Plaintiff did not know the true facts, and relied upon the material representations made by Defendant.

89. Defendant knew these representations were false, and intended that Plaintiff and Class members would rely upon these false representations.

90. As a result of Defendant's fraudulent representations, Plaintiff and members of the Class were induced into the purchase of goods and/or services that they otherwise would not have purchased, or would have paid less, and have suffered injury, harm and damages as described in this Complaint.

**SIXTH CAUSE OF ACTION**
**Fraudulent Concealment**

91. Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

92. Defendant's marketing materials and websites represent to owners that when travelers search rental property listings, "results are initially ordered according to subscription level" and further that, "within subscription levels, the order in which listings appear is determined by our recently introduced best match system."

93. Defendant's marketing materials and websites represent to owners that more expensive subscriptions will result in listings that appear before lesser expensive subscriptions. Defendant's represent that listings will appear in the following order: platinum, gold, silver, bronze, classic.

94. In addition to fees for varying levels of subscriptions, Defendant also offers owners a "pay-per-booking" option. This option charges owners a commission equal to 8 percent of the

booking cost, and requires no annual subscription fee.

95.     Defendant's marketing materials and websites represent that pay-per-booking listings appear in a traveler's search results based solely upon a "combination of traveler preferences and the booking experience a listing provides."

96.     Defendant affirmatively conceals that it effectively promotes pay-per-booking listings through traveler search results, such that pay-per-booking listings appear higher in a traveler's search results than those listings would appear if they were subscription listings.

97.     At all relevant times, Defendant and Plaintiff were in a contractual relationship such that Defendant had a duty to disclose this omitted and concealed fact. Defendant did not disclose this fact.

98.     That undisclosed and concealed fact was material, such that had Plaintiff and members of the Class known that Defendant's search results give higher placement to pay-per-booking listings in a traveler's search results than subscription-based listings, Plaintiff and members of the Class would not have purchased annual subscriptions from Defendant, or would have paid less for their subscriptions.

99.     At all relevant times, Plaintiff and members of the Class were unaware of the undisclosed and concealed facts concerning pay-per-booking listings.

100.     As a result, Defendant's failure to disclose the concealed information has proximately caused injury to Plaintiff and members of the Class in an amount to be proved at trial.

### SEVENTH CAUSE OF ACTION
**Violation of Texas Deceptive Trade Practices Act, V.T.C.A. 17.41,** *et seq.*

101.     Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

102.     Prior to February 9, 2016, Plaintiff purchased goods and/or services consisting of

(a) the visible listing of five vacation rental properties on Defendant's websites; (b) visible advertising of Plaintiff's five vacation rental properties on Defendant's websites; and (c) online booking features through Defendant's websites.

103.    Through its representations and conduct alleged and described herein, Defendant engaged in the following false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce in violation of Texas law:

a.    Defendant represented that its good and/or services had characteristics and benefits which they do not have by falsely representing that owners who purchased subscriptions to its websites would be able to rent their vacation rental properties to travelers, without travelers incurring any fees to Defendant.

b.    Defendant represented that its goods and/or services had characteristics and benefits which they do not have by falsely representing that vacation home listings submitted by owners who purchased subscriptions to Defendant's websites would appear above listings from owners who did not purchase subscriptions.

c.    Defendant advertised goods and/or services with the intent not to sell them as advertised by representing that owners who purchased subscriptions to Defendant's websites would be able to rent their vacation rental properties to travelers, without travelers incurring additional fees owed to Defendant, when in fact, Defendant knew it would impose additional fees on travelers using its websites and labeled those fees, "service fees."

d.    Defendant represented that the agreement between Defendant and Plaintiff

would confer or involve rights, remedies and obligations when in fact it did not, by falsely representing to owners who purchased subscriptions that travelers booking through Defendant's websites would not incur additional fees owed to Defendant.

e.      Defendant represented that the agreement between Defendant and Plaintiff would confer or involve rights, remedies and obligations when in fact it did not, by falsely representing to owners that vacation home listings submitted by owners who purchased subscriptions to Defendant's websites would appear above listings from owners who did not purchase subscriptions.

f.      Defendant failed to disclose information concerning its goods and/or services which was known to Defendant, when Defendant failed to disclose that it intended to charge substantial fees to travelers using Defendant's websites to book owners' vacation rental properties.

g.      Defendant failed to disclose information concerning its goods and/or services which was known to Defendant, when Defendant failed to disclose that its search listing results effectively promote pay-per-booking listings, such that pay-per-booking listings appear higher in traveler's search results than they would if they were subscription listings.

104.    Defendant's conduct alleged and described herein was unconscionable in that Defendant, by means of its conduct alleged herein, took advantage of its customers' lack of knowledge that Defendant would materially alter the contract and would begin to charge travelers substantial fees for renting vacation properties through Defendant's websites.

105.    To their detriment, Plaintiff and members of the Class relied upon Defendant's

representations that it would not charge additional fees to travelers beyond the cost of the rental property itself, and/or relied on the absence of disclosure by Defendant that it would unilaterally change its model and rate structure to impose a substantial fee upon travelers for renting vacation rental properties through Defendant's websites.

106.    To their detriment, Plaintiff and members of the Class relied upon Defendant's representations that listings submitted by owners who purchased subscriptions would appear above those listings submitted by owners who did not purchase subscriptions to Defendant's websites. To their detriment, Plaintiff and members of the Class relied on the absence of any disclosure by Defendant that its search results effectively promote pay-per-booking listings, such that pay-per-booking listings appear higher in a traveler's search results than they would if they were subscription listings.

107.    By reason of such violations, Plaintiff and members of the Class have been damaged in an amount to be proved at trial.

**EIGHTH CAUSE OF ACTION**
**Violation of the Kentucky Consumer Protection Act, KRS 367.170, *et seq.***
**(On Behalf of Plaintiff and the Kentucky Sub-Class)**

108.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

109.    At all times relevant, Defendant violated the Kentucky Consumer Protection Act, K.R.S. 367.170, et seq., ("KCPA"), by use of false and misleading representations or omissions of material fact described herein, including Defendant's representations that booking through its websites would remain free to travelers, that traveler search results are ordered according to subscription level and that preference is not given to pay-per-booking listings, and that rates in effect at the time of the member's next subscription renewal, new listing or upgrade would govern.

110.     Plaintiff and Class members are consumers, purchasers, or other persons entitled to the protection of the KCPA.

111.     The KCPA declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendant violated the KCPA in the manner described herein.

112.     By reason of such violations and pursuant to the KCPA and other relevant consumer protection laws, Plaintiff and members of the Class are entitled to recover all of the monies paid for services they did not receive; to be compensated for the lost value; and to recover any and all consequential damages recoverable under the law.

113.     Privity existed between Plaintiff and Defendant, and between Class members and Defendant.

114.     Plaintiff and members of the Class entered into contracts with Defendant which did not impose additional fees upon travelers in its Terms and Conditions, and did not agree or consent to a unilateral, material alteration of those contracts by Defendant.

115.     Defendant violated the KCPA and other consumer protection statutes by engaging in unfair and/or deceptive acts and/or practices, including, inter alia, advertising that owners could rent their vacation properties to travelers without travelers incurring additional fees beyond the cost of the rental property itself; fraudulently representing that traveler search results are ordered according to subscription level; representing that owners could increase visibility of their listings by purchasing a more expensive subscription level; affirmatively concealing that Defendant's websites effectively promote pay-per-booking listings by increasing their visibility in traveler search results; and failing to disclose information known to Defendant, including that it intended to charge substantial fees to travelers using its websites for booking.

116.     As a direct and proximate result of Defendant's unfair and/or deceptive acts and/or

practices, Plaintiff and members of the Class were damaged in an amount to be proved at trial.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

117.   Plaintiff repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

118.   Plaintiff and members of the Class conferred a benefit on Defendant by paying money for goods and/or services, including (a) the visible listing of vacation rental properties on Defendant's websites; (b) the visible advertising of vacation rental properties on Defendant's websites; and (c) online booking features through Defendant's websites.

119.   Plaintiff and members of the Class further conferred a benefit on Defendant by purchasing subscriptions and bundles, described herein.

120.   Defendant has been unjustly enriched in retaining the revenue derived from money paid by Plaintiff and members of the Class, who did not receive the goods and/or services for which they paid. Retention under these circumstances is unjust and inequitable because of Defendant's misrepresentations that it would remain free to travelers.

121.   Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's misrepresentations and omissions because they paid for goods and/or services that they did not receive, and that they would not have purchased had they known the true facts. Because Defendant's retention of the non-gratuitous benefit conferred upon it by Plaintiff and the members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## TENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Kentucky Sub-Class)

122.   Plaintiff repeats, realleges and incorporates by reference each of the foregoing

allegations as though fully set forth herein.

123.   The Terms and Conditions attached hereto as Exhibit 1 are a contract of adhesion.

124.   The contract attached hereto as Exhibit 1 contains a good faith and fair dealing implied as a matter of law. The covenant of good faith and fair dealing imposes upon each party thereto a duty to cooperate with the other to enable performance and achievement of the expected benefits of the contract and prohibits the parties from engaging in any activity or conduct which would prevent the other party from receiving the expected benefits of the contract.

125.   Plaintiff has fully performed all covenants, conditions and obligations required to be performed by reason of the contract, except to the extent waived, excused or made impossible by Defendant's breaches of the contract.

126.   Defendant breached its duty of good faith and fair dealing owed to Plaintiff and members of the Class by materially changing its rates and fees during the term of the contract, including by imposing a new "service fee" on travelers who rent owners' vacation rental properties through Defendant's websites. By this conduct, Defendant has denied and continues to deny Plaintiff the benefits she expected under the contracts, specifically, the ability to rent her vacation rental properties to the largest number of qualified travelers reasonably possible.

127.   As a direct and proximate result of its breach of the implied covenant of good faith and fair dealing, Plaintiff and members of the Class have been damaged in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, pray for relief and judgment against Defendant, as follows:

1.   For an order certifying the proposed class, appointing Plaintiff and her counsel to

represent the proposed class and notice to the proposed class to be paid by Defendant;

2.      For damages suffered by Plaintiff and the proposed class;

3.      For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendant;

4.      For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair and/or deceptive practices alleged in the Complaint;

5.      An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

6.      For Plaintiff's reasonable attorneys' fees, as permitted by law;

7.      For Plaintiff's costs incurred;

8.      For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

9.      For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.


Dated: April 15, 2016          By: s/ Michael C. Singley

Michael C. Singley
Texas Bar No. 00794642
THE SINGLEY LAW FIRM, PLLC
4131 Spicewood Springs Rd., Ste. O-3
Austin, Texas 78759
(512) 334-4302 phone
(512) 727-3365 fax
mike@singleylawfirm.com

Ketan U. Kharod
Texas Bar No. 24027105
KHAROD LAW FIRM, P.C.
P.O. Box 151677
Austin, TX 78715-1677
(512) 293-1556 phone
(512) 852-4506 fax
ketan@kharodlawfirm.com

Jasper D. Ward IV
Alex C. Davis
Ashton Smith
**JONES WARD PLC**
Marion E. Taylor Building
312 S. Fourth Street, Sixth Floor
Louisville, Kentucky 40202
Tel. (502) 882-6000
Fax (502) 587-2007
jasper@jonesward.com
alex@jonesward.com

Robert Ahdoot
Theodore W. Maya
Bradley K. King
**AHDOOT & WOLFSON, PC**
1016 Palm Ave.
West Hollywood, California 90069
Tel. (310) 474-9111
Fax (310) 474-8585
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com