IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 JAN 18 PM 2:26
CLERK U.S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
DEPUTY CLERK

| | |
|---|---|
| DEIDRE SEIM, § | |
|       PLAINTIFF, § | |
| § | |
| V. § | CAUSE NO. 1:16-CV-479-LY |
| § | |
| HOMEAWAY, INC. AND DOES 1-10, § | |
|       DEFENDANTS. § | |

## ORDER

Before the court are Defendant HomeAway, Inc.'s Motion to Compel Arbitration and Dismiss This Suit filed July 11, 2016 (Clerk's Doc. No. 15), Plaintiff's Opposition to Motion to Compel Arbitration & Dismiss this Suit filed August 10, 2016 (Clerk's Doc. No. 22), and Defendant HomeAway, Inc.'s Reply in Support of Motion to Compel Arbitration and Dismiss this Suit filed August 19, 2016 (Clerk's Doc. No. 24). The court held a hearing on the motion on August 24, 2016, at which Deidre Seim and HomeAway, Inc. ("HomeAway") appeared through counsel. Having considered the motion, response, reply, argument of counsel at the hearing, and applicable law, the court concludes the motion should be granted for the reasons to follow.

### I. BACKGROUND

HomeAway is a vacation-rental marketplace serving vacation-home owners and property managers who wish to rent homes to travelers on a short-term basis. Before February 2016, HomeAway did not charge fees to *travelers* for using its service, but charged *owners and property-managers* fees or commissions. In exchange, the owners and managers could list available homes for rent and could access and use various booking, tracking, and financial tools provided by HomeAway.

Seim has used HomeAway's sites to list vacation properties for rent since 2011. Seim alleges that HomeAway began charging travelers service fees in February 2016, and asserts claims against HomeAway for breach of contract, fraud, fraudulent concealment, unjust enrichment, and violations of the common-law duty of good faith and fair dealing, the Uniform Deceptive Trade Practices Act, and various state consumer-protection statutes.

HomeAway now moves to compel this case to arbitration, asserting that Seim is bound by HomeAway's February 9, 2016 Terms and Conditions, which provide:

> **Any and all Claims will be resolved by binding arbitration, rather than in court,** except you may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against [HomeAway], our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms, regardless of whether prior versions of the Terms required arbitration.
> …
> Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules.

(shading in original). Seim agreed to the February 9, 2016 Terms and Conditions by enrolling one of her properties in HomeAway's "pay-per-booking" service on March 17, 2016.

## II. STANDARD OF REVIEW

Arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 855 (Ky. 2004).[1] Arbitration clauses may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers of Am.*, 363 U.S. at 582.

### III. ANALYSIS

Determination of whether there is a valid agreement to arbitrate between the parties is generally made on the basis of "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938 (1995).

### *1. Relevant Terms and Conditions*

Seim argues that her claims are subject to HomeAway's September 15, 2015 Terms and Conditions. Seim alleges that she has five properties for which she uses HomeAway's services and that she agreed to the February 9, 2016 Terms and Conditions with regard to but one of her properties. Seim asserts that her other four properties are subject only to the September 15, 2015 Terms and Conditions, which were in effect when she renewed her subscription for those properties. However, Seim does not dispute that she agreed to the February 9, 2016 Terms and Conditions with regard to one of her properties. The plain language of the February 9, 2016 Terms and Conditions, however, provides that the arbitration provision applies to "any Claims [Seim] assert[s] against [HomeAway]," including "any Claims that arose before [Seim] accepted these Terms, regardless of whether prior versions of the Terms required arbitration."

The court concludes that Seim's claims are governed by the arbitration clause in the February 9, 2016 Terms and Conditions. *See United Steelworkers*, 363 U.S. at 582-83 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive

---

[1] The court will apply Kentucky law because the parties agree that Kentucky law should apply. The court expresses no opinion on whether the choice of Kentucky law would survive a choice-of-law analysis.

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

### 2. *Manifestation of Assent*

Seim then argues the February 9, 2016 Terms and Conditions are unenforceable, because HomeAway did not require Seim to affirmatively check a box agreeing to the terms. Seim asserts HomeAway's website stated that by signing up or signing into the website, Seim agreed to the February 9, 2016 Terms and Conditions, without requiring a separate, affirmative manifestation of assent. Seim contends this type of agreement is unenforceable under *Berkson v. Gogo, LLC*, 97 F. Supp. 3d 359, 394-95 (E.D.N.Y. 2015).

However, Seim presents no evidence to support her assertion HomeAway's website did not require affirmative consent to the February 9, 2016 Terms and Conditions. HomeAway presents a declaration of Ameli Agbodan, an Order Management Product Manager at HomeAway, who attests that on March 17, 2016, Seim would not have been able to complete her transaction without checking a box to agree to the February 9, 2016 Terms and Conditions. Agbodan attaches photographs to her declaration representing the computer screens Seim would have had to see to complete a transaction on March 17, 2016, including a screen showing where Seim had to check "I accept the Terms and Conditions and Privacy Policy" before proceeding. Seim presents no evidence to contradict HomeAway's demonstration. At least one Kentucky court has upheld use of such a "clickwrap" agreement, where the user must consent by clicking on a box on the screen before she is allowed to continue. *See Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc.*, No. 3:07-CV-139H, 2007 WL 3118482, at *1 (W.D. Ky. Oct. 22, 2007) ("Though this Court finds no Kentucky case discussing the issue, a survey of cases from other jurisdictions suggests that clickwrap agreements requiring the user to assent to their terms are

4

generally upheld in the face of allegations of insufficient notice of terms.") (citing *Davidson & Assocs. v. Internet Gateway*, 334 F.Supp.2d 1164, 1176-78 (E.D.Mo.2004); *Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238 (S.D.N.Y. 2000); *Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91 (N.Y.App.Div. 2002); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex.App.—Eastland 2001)).

The court concludes that Seim assented to the February 9, 2016 Terms and Conditions.

### 3. *Illusory Contract*

Seim argues the February 9, 2016 Terms and Conditions are illusory because HomeAway reserves the unilateral right to change the terms at any point. The February 9, 2016 Terms and Conditions provide:

> [HomeAway] reserve[s] the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately. If you disagree with any non-clerical and/or substantive amendment to these Terms, then (i) your sole remedy as a traveler, or any other user other than a member, is to discontinue your use of the Site, and (ii) your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment and you agree that you are responsible for keeping a copy of such terms.

A contract that provides that one party may modify the terms at any time without notice to the other party before the modified terms become effective is illusory. *See Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 604 (6th Cir. 2013) (applying Kentucky law) ("Because Defendant retained the ability to modify any term of the contract, at any time, its promises were illusory."). In *Day*, the court held a contract illusory where "Defendant was not bound by any

particular provision of the contract" because "at any point…Defendant could have changed any clause without any recourse sounding in contract law available to Plaintiffs." *Id.* Further, "the only notice provision made changes effective upon their issuance, rather than after a fixed period of time." *Id.*

In contrast, HomeAway may not modify the terms of the February 9, 2016 Terms and Conditions without notice to Seim. HomeAway is bound by the February 9, 2016 Terms and Conditions unless and until Seim consents to any proposed amendment. If Seim does not agree to a proposed amendment, her "use of the Site will continue to be governed by the terms and conditions that were applicable to [her] use of the Site during the then current term of [her] subscription."

Seim also argues that the February 9, 2016 Terms and Conditions lack consideration because she did not pay any money when she agreed to the terms. However, by agreeing to the February 9, 2016 Terms and Conditions, Seim did provide other consideration, such as her promise to pay HomeAway commissions on bookings she receives through the HomeAway's website.

The court concludes that the February 9, 2016 Terms and Conditions are supported by adequate consideration and are not illusory.

### 4. Unconscionability

Seim argues the February 9, 2016 Terms and Conditions are unconscionable. "Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement. It includes, for example, the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citation omitted). The

February 9, 2016 Terms and Conditions are stated in clear, concise language, in an easy to read font, with important sections, such as "[t]here is no judge or jury in arbitration," printed in bold.

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* The February 9, 2016 Terms and Conditions are supported by adequate consideration from both parties, and Seim manifested legally sufficient assent to the terms.

The court concludes that the February 9, 2016 Terms and Conditions are not unconscionable.

## IV. CONCLUSION

The court concludes that the February 9, 2016 Terms and Conditions contain a valid arbitration agreement between Seim and HomeAway.

**IT IS THEREFORE ORDERED** that Defendant HomeAway, Inc.'s Motion to Compel Arbitration and Dismiss this Suit (Clerk's Doc. No. 15) is **GRANTED**.

SIGNED this 18th day of January, 2017.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE